# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERIPAY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 04 C 5253 |
| ) | |
| AMERIPAY PAYROLL, LTD., ) | Judge Ronald A. Guzmán |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Ameripay LLC has sued Ameripay Payroll, Ltd., for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and trademark infringement and unfair competition pursuant to the Lanham Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. §§ 1114, 1125(a), as well as for violating New Jersey laws, prohibiting unfair competition and trademark infringement. Defendant has moved for summary judgment based on laches. For the reasons set forth below, the Court denies the motion.

## FACTS[1]

Unless otherwise noted, the following facts are undisputed. Defendant Ameripay Payroll, Ltd. is an Illinois corporation located and doing business in Illinois. (Def.'s LR 56.1(a)(3) ¶ 4.) It provides payroll and tax-payment processing and services primarily to clients in Illinois and Wisconsin. (Id. ¶¶ 5, 35.) Plaintiff Ameripay LLC is a New Jersey corporation located in New Jersey that provides payroll-processing services primarily to clients with

---

[1] The Court notes that plaintiff did not file a statement of additional facts pursuant to N.D. Ill. LR 56.1(b)(3)(B). To the extent that plaintiff's responses to defendant's statement of facts attempt to state additional facts that do not serve as a denial of a particular fact statement, the Court has not considered the response or that portion of the response.

headquarters in New York and New Jersey. (*Id.* ¶¶ 1, 2.)

In 1995, plaintiff adopted and first used the Ameripay mark in New Jersey. (*Id.* ¶ 3.) In August 1997, defendant began operating its business in Illinois using the name Ameripay Payroll, Ltd. (*Id.* ¶¶ 6, 9.)

In July 1998, plaintiff first became aware of defendant when one of plaintiff's employees advised Paul Bultmeyer, Executive Director of Ameripay LLC, that he discovered defendant's name on a chamber of commerce listing under payroll services while searching the Internet. (*Id.* ¶ 12; Def.'s Ex. 2, Bultmeyer Dep. of 9/1/04 at 70.) On August 7, 1998, Bultmeyer sent defendant a cease-and-desist letter. (Def.'s LR 56.1(a)(3) ¶ 13.) The letter stated: "It has come to my attention that your firm is using 'Ameripay' as a service mark for payroll processing services. . . . Your firm's use of this service mark is an infringement of my client's rights under this registration." (*Id.*; *see* Def.'s Ex. 1, Schurin Decl. Ex. 7, Letter from Bultmeyer to Sarowitz of 8/7/1998.)

Bultmeyer testified that when defendant did not respond to his letter within a month or two, Bultmeyer called Steven Sarowitz, President of Ameripay Payroll, Ltd. (Def.'s LR 56.1(a)(3) ¶ 15.) He also testified that Sarowitz told him that defendant would respond to his demand before the end of the year, after consulting counsel. (*Id.* ¶ 16.) However, plaintiff now argues that Bultmeyer so testified because at the time, he did not have the benefit of a particular document, a facsimile cover sheet, to refresh his recollection. The document, dated August 17, 1998, contains Bultmeyer's handwritten statement that he spoke with defendant's principal Steve Sarowitz, and that Steve said he was willing to discontinue use of the mark but asked for some time to use up his current letterhead. (Pl.'s LR 56.1(b)(3)(A) ¶ 15.) The Court views these disputed facts in plaintiff's favor.

Sarowitz then called plaintiff's principal, Arthur Piancentini. (Def.'s LR 56.1(a)(3) ¶ 17.) Sarowitz did not state that defendant would stop using the Ameripay mark, and Bultmeyer never withdrew the allegations in his August 7, 1998 letter. (*Id.*)[2]

In March 1999, defendant purchased the domain name *ameripay.com* from the previous registrant. (*Id.* ¶ 18.) The web site became active shortly thereafter. (*Id.* ¶ 19.)

In October 1999, a law firm representing plaintiff sent defendant a letter demanding that defendant stop using the Ameripay mark. (*Id.* ¶ 20; *see* Def.'s Ex. 1, Schurin Decl. Ex. 9, Letter from Radin to Sarowitz of 10/21/1999.) In the letter, plaintiff stated, "if we do not receive a response to this letter indicating that you will comply with the above demands or if you are not willing to voluntarily proceed as requested, our clients will be forced to initiate suit against you for willful trademark infringement and for monetary damages and attorney's fees once our client has completed its plans to offer its services in Illinois." (Def.'s LR 56.1(a)(3) ¶ 20.) Defendant again called plaintiff's principal, Piancentini, and stated that defendant would not cease using the Ameripay mark. (Pl.'s LR 56.1(b)(3)(A) ¶ 22.) Defendant never complied with the letter. (Def.'s LR 56.1(a)(3) ¶ 22.)

When plaintiff's counsel sent the October 1999 letter, plaintiff provided payroll services to a New Jersey client that had an office in Illinois, which required mailing checks to Illinois. (*Id.* ¶ 21; *see* Pl.'s LR 56.1(b)(3)(A) ¶ 21.) Further, plaintiff admits that it was not in fact prepared to bring suit against defendant because plaintiff and defendant were not competing at the time. (Def.'s LR 56.1(a)(3) ¶ 23.) Instead, plaintiff waited for defendant to be more directly

---

[2]Although plaintiff attempts to dispute the fact statements in paragraph 17 of defendant's statement of facts, plaintiff fails to cite any portion of the record in support of its denial and thus these statements are deemed admitted. (*See* Pl.'s LR 56.1(b)(3)(A) ¶ 17.)

3

competitive before bringing suit. (*Id.* ¶ 24.) Plaintiff did not contact defendant again until four years later upon service of plaintiff's Complaint in July 2003. (*Id.* ¶ 22.)

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Dribeck Imps., Inc. v. G. Heileman Brewing Co., Inc.*, 883 F.2d 569, 573 (7th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In considering such a motion, the court must view all inferences in the light most favorable to the nonmoving party. *See Regner v. City of Chi.*, 789 F.2d 534, 536 (7th Cir. 1986). Although the district court's role on summary judgment is not to sift through the evidence and decide whom to believe, the court will enter summary judgment against a party who does not come forward with evidence that would reasonably permit a finder of fact to find in his or her favor on a material questions. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Defendant argues that plaintiff's claims are barred under the doctrine of laches. Plaintiff argues that: (1) laches does not bar its cybersquatting claim; (2) the doctrines of progressive encroachment and unclean hands prevent defendant from asserting laches as to the rest of plaintiff's claims; (3) even if the Court were to find that its claims for damages are barred by laches, the delay in bringing suit was not so egregious as to warrant barring injunctive relief.

The Court addresses these arguments in turn.

## I. Laches is Inapplicable to Cybersquatting Claim

Although defendant originally moved for summary judgment based on laches as to all counts, defendant concedes in its reply brief that laches does not apply to plaintiff's claim brought pursuant to the Anticybersquatting Consumer Protection Act (Count I). (*See* Def.'s Reply Mem. Supp. Mot. Partial Summ. J. at 1 n.1.) Therefore, the Court denies defendant's motion for summary judgment as to Count I.

## II. Laches[3]

"The equitable doctrine of laches is derived from the maxim that those who sleep on their rights, lose them." *Hot Wax*, 191 F.3d at 820. "For laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002) (citations omitted). "Laches is generally a factual question not subject to summary judgment." *Jeffries v. Chi. Transit Auth.*, 770 F.2d 676, 679 (7th Cir. 1985).

---

[3]The doctrine of laches is an affirmative defense to unfair competition and trademark infringement claims brought pursuant to the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), as well as claims for unjust enrichment and accounting of damages. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822, 824 n.3 (7th Cir. 1999). Laches is also a defense to unfair competition claims brought pursuant to New Jersey statute, N.J. Stat. Ann. § 56:4-1, and common law infringement and unfair competition claims under New Jersey law. *See Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 386 (D.N.J. 2002) (statute); *Apollo Distrib. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 143 (D. N.J. 1988) (common law).

Courts refer to the analogous state statute of limitations to determine whether a presumption of laches should apply. *Hot Wax*, 191 F.3d at 822-23. If the presumption of laches arises, it "must be rebutted . . . with specific evidence excusing the delay . . . ." *A.C. Aukerman Co. v. Miller Formless Co., Inc.*, 693 F.2d 697, 699 (7th Cir. 1982). The "plaintiff[] bear[s] the burden of explaining [its] delay in bringing suit." *Miller v. City of Indianapolis*, 281 F.3d 648, 653 (7th Cir. 2002).

Both parties assume that the three-year statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/10a(e), applies. (*See* Def.'s Mem. Supp. Summ. J. at 6; Pl.'s Mem. Law Supp. Opp'n Def.'s Mot. Summ. J. at 13); *see also Chattanoga*, 301 F.3d at 793. Accordingly, so shall we. *Harter v. Iowa Grain Co.*, 220 F.3d 544, 560 n.13 (7th Cir. 2000) (stating that where parties agree on law governing dispute, and there is a reasonable relation between dispute and forum's law chosen by parties, the court applies the parties' choice and does not undergo its own analysis of the choice-of-law issue).

There is no dispute that plaintiff had knowledge of defendant's use of the Ameripay mark at the very latest in August 1998, when plaintiff sent a cease-and-desist letter to defendant. (*Id.* ¶ 13.) Plaintiff filed the instant suit on July 24, 2003. (Compl.) The Court holds that plaintiff's nearly five-year delay in filing suit creates a presumption of laches.

However, the Court finds that plaintiff has created a factual issue regarding whether the progressive encroachment doctrine applies in this case to overcome the presumption of laches. "[T]he doctrine of progressive encroachment . . . allows a trademark owner to tolerate *de minimis* or low-level infringements and still have the right to act promptly when a junior user either gradually edges into causing serious harm or suddenly expands or changes its mark." *AM*

6

*Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 823 (7th Cir. 2002) (quotations omitted). "Under this doctrine, where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." *Chattanoga*, 301 F.3d at 794 (quotations omitted).

Again, it is undisputed that plaintiff became aware that defendant was using the Ameripay name to market payroll services at the very latest August 1998. (Def.'s LR 56.1(a)(3) ¶¶ 12-13.) It is undisputed that defendant began its website shortly after March 1999. (*Id.* ¶ 18.) Bultmeyer testified that once he became aware of defendant's website, he would take a look at what defendant was doing "every now and again." (Def.'s Ex. 2, Bultmeyer Dep. at 226.) Bultmeyer also testified that when plaintiff sent the October 1999 cease-and-desist letter to defendant, he "was unaware of any change" in defendant's business. (*Id.* at 212.) At the time when plaintiff sent the cease-and-desist letters to defendant, it appears that neither plaintiff nor defendant considered each other a competitor in the same geographic marketplace. (*Id.* at 217; Pl.'s Ex., Ravin Decl., Ex. A, Sarowitz Dep. of 8/17/2004 at 17.) However, Bultmeyer states that defendant has entered plaintiff's geographic market by aggressively marketing itself on the Internet, Pl.'s Ex., Bultmeyer Decl. ¶ 24, and that defendant's website is now highly interactive and enables defendant to deliver goods and services into plaintiff's geographic market, *id.* ¶ 28. Viewing all of these facts in plaintiff's favor, a reasonable jury could conclude that defendant changed the way in which it marketed its services via its website between October 1999 and the filing of the instant lawsuit such that defendant is now placed more squarely in competition with plaintiff. Further, a reasonable jury could find, based on these facts, that it was reasonable for plaintiff to delay taking legal action. Because the Court holds that plaintiff has created a triable

issue as to the material fact regarding whether its delay in suing defendant is excused, the Court denies defendant's motion for summary judgment based on laches. Accordingly, because plaintiff has raised a genuine issue regarding laches that, in and of itself, is sufficient to withstand defendant's summary judgment motion, the Court need not address plaintiff's other arguments, *i.e.*, whether the doctrine of unclean hands applies or whether the delay in bringing suit warrants barring injunctive relief.

## CONCLUSION

For the reasons set forth above, the Court denies defendant's motion for summary judgment based on laches [doc. no. 53-1]. The parties shall be prepared to set a date for the filing of the final pretrial order and for trial at the next status hearing.

**SO ORDERED**  ENTERED: 9/16/05

HON. RONALD A. GUZMAN
**United States Judge**